Curia, per

O’Neall, J.
This case certainly does present itself, in some respects, in rather strange phases. For instance, until explained, it Avould appear a strange result, that a verdict should have been found against S. Ilsley, one of the defendants, without a tittle of proof against him. But the explanation removes, at once, this apparent absurdity. The case stood upon the docket against Kelsey & Deas ; they were treated, throughout the case, as the only defendants. Indeed I never knew, until served with the notice of appeal, that there was such a defendant in the case. So in reference to the second count, it was stated, and not denied, that there was a count for receiving, detaining, and opening the plaintiff’s letter.
So much to place the case in its proper light was deemed necessary before entering upon the case itself.
The ground of appeal presents the question, whether the *370 second count is upon the receiving, detaining, and opening the plaintiff’s letter' as a cause of action, or whether it is merely stated as aggravation of the malicious arrest. It is plain, on reading the count, that it is a matter thrown in as aggravation, and is not stated as a distinct and substantive cause of action; for the count alleges that the defendants, without any reasonable or probable cause of action against the plaintiff then due and owing to the amount of the sum of money for which they caused the plaintiff to be arrested, &e. “ maliciously sued out their writ against the plaintiff.” This shews that the malicious arrest was the subject in the mind of the pleader; and, accordingly, he followed up his beginning by stating that a false affidavit to hold to bail was made, under the writ thus issued; that this plaintiff was arrested, committed to jail, and there remained until bailed: — and then he alleges, that while thus kept in jail, the defendants received, detained' and opened his letter: then the- count resumes the original grievance, and sets out that the defendants discontinued their suit against the plaintiff, and concludes, by saying“ By means of all which said several premises, and during said unlawful imprisonment, and the malicious keeping and concealing his said letter and breaking the seal thereof, and detaining the same and the money therein belonging to the plaintiff, he, the plaintiff, suffered great pain and anxiety of body and mind, and was prevented from transacting his necessary affairs and business by him during that time to be performed; and thereby also the plaintiff necessarily incurred divers costs and expenses, to wit, — to the amount of one thousand dollars in and about the obtaining his release from the said arrest and imprisonment, and in and about defending himself against' the said action; and in and about other the premises and by means of the premises the plaintiff was and is injured in his credit and circumstances,” &c. (*)
*371 It is plain, from this examination of the count, that the matter about the letter is not stated as any distinct cause of action. It is used as part of the injury, sustained by the plaintiff, in the malicious arrest. That the count was bad on demurrer, is clear, if the matter about the letter is a good cause of action, and is stated as such : for then two causes of action would be joined in the same count. I think it is possible that it may be a good cause of action, and that if it had been set out as such, this verdict might have been sustained. Bdt it is not so stated, — it is merely set out as an incident of the malicious arrest. I am, therefore, satisfied, that the case went improperly to the jury in that respect. But, notwithstanding this may be so, still if the plaintiff made out a case, on the malicious arrest, on which he *372 could stand, the motion for nonsuit would not be allowed to prevail here. I thought, however, on the Circuit, and still think, he failed in this respect; for without adverting to the necessity of shewing express malice to sustain a case of this kind, about which no opinion is now intended to be given on the part of the Court, it will be enough if the plaintiff failed to shew that the defendants issued their writ, and held him to bail, without any reasonable or probable cause.
It was supposed, in the argument, that this was a case for demanding bail for a larger sum than was 'really due. But that is not the character of the case made. It is true the beginning of the first count alleges that the defendants, without any reasonable or probable cause of action whatever against the plaintiff, *373 “ to the amount of the sum of money for which” they caused the plaintiff to be arrested, maliciously sued out their writ, &c; but in an after part of the same count, after setting out the affidavit to hold to bail, the plaintiff traverses it, and declares it tobe “wholly untrue, groundless, and without probable cause.”
The second count makes the allegation that the defendants, “without any reasonable or probable cause of action then due and owing to the amount of the sum of money for which they caused the plaintiff to be arrested, maliciously sued out their writ,” &c. against the plaintiff. The third count is without pre-tence for causing the plaintiff to be arrested without any reasonable or probable cause whatever.
Having made this statement of the record, I think it is apparent that it does not make out a case for demanding excessive bail: for I agree with what is said in the note to Wetherden vs. Embden, (1 Camp. 298,) that in such a case it is necessary to state that the plaintiff owed the defendant so much, and that the defendant demanded bail for more, whereby he was imprisoned for want of bail. It is possible that the defective statements in the declaration might have been cured by the verdict, if the proof had shewn how much the plaintiff really did owe — and fox-how much more than the real sum bail was demanded; but there was no such proof. Indeed the case did not go to the jury on *374 any case of that kind, but on a wholly different one, and on which the plaintiff had no status in Court sufficient to prevent a nonsuit. He now, however, falls back upon the case made, which did not go to the jury, and claims that that should prevent a nonsuit. Under such circumstances, his defective statement has no help from the verdict. Comparing his proof with the record, there is neither allegation nor proof of injury from demanding bail for too large a sum.
Indeed, the whole case, when the record is examined, is for maliciously arresting the plaintiff, without any reasonable or probable cause: or else it does not state with sufficient certainty any other cause of action.
Considering the case, therefore, as for a malicious arrest, it will be enough to defeat it if there be a failure to shew that the writ was issued without reasonable or probable cause.
In the first place it is supposed that a mere discontimtance is prima facie enough to establish a want of probable cause. But surely there can be no ground for such a notion when neither a nolle prosequi, nor “no bill” by the grand jury, in a criminal matter, can have such effect. Fulmer vs. Harmon, (3 Strob. 576.)
But independent of authority, there can be no doubt about it. Probable cause is any thing which creates a reasonable belief that the charge is true. Does the mere withdrawal of a suit create a belief that an affidavit to hold to bail is false? It does not afford any ground to believe that the party did not think the affidavit was true: for a discontinuance may arise from some technical objection, such as that the party brought assumpsit, when the form of action should have been debt.
So, too, the plaintiff regarded the law: for he did not stop when he gave the discontinuance in evidence, but he went on to shew, if he could, that no debt was due. But in this he wholly failed: for instead of shewing that no debt was due, he conclusively shewed that he was indebted to the defendants. It is true he shewed that an account, contracted in 1847, for about one-fourth of the debt claimed by the defendants, was settled on the *375 16th May, 1848, by a note due 16th July, 1848. But this was no evidence that the defendants had not cause of action, as they alleged, by notes and account, or at least believed that they had. But the proof which he gave of a draft drawn in favor of the defendants on Scranton, Augusta, for $500, and not accepted before he was sued: the telegraphic dispatch, which he sent in the morning of the day on which he was sued, and before he was sued, desiring. Scranton to pay to Warren for the defendants whatever sum of money they had in their hands, are plain admissions of a present indebtedness to the defendants. Indeed the last, unqualified as it was as to the amount, might, if necessary, be regarded as an admission of the whole debt demanded.
So, too, in the conversation in jail, proved by Cook, there is an admission of indebtedness by the plaintiff which cannot be got round. In that conversation, Kelsey affirmed the whole sum demanded was due: Ford did not pretend that nothing was due: on the contrary, he said a large part had been paid. After such proof, how can it be said there was an absence of probable cause? There was not only proof enough to shew that the defendants believed what Kelsey swore was true, but also that, in fact, the plaintiff was indebted in a considerable sum to the defendants.
It is said, however, the existence of probable cause is a question for the jury. That is true, where there is any dispute about facts. But where, as here, all the facts proved by the plaintiff are assumed to be true, and still they do not make out what in law constitutes proof of absence of probable cause, it follows there is nothing to go to the jury.
The motion for a nonsuit is granted.
Evans, Feost, Withers and Whitnee, JJ,, concurred.
Wardlaw, J.
The defendants pleaded only a general traverse : the whole case, except so much as related to the opening of the letter, was withdrawn from the consideration of the jury, because express malice and want of probable cause were not both proved by the plaintiff; and the evidence of the defendants was not offered. A verdict which, after a full trial, might be rendered *376 for the plaintiff, would be supported by the count which alleges the opening of the letter, followed by special damage, as the wrong done (every thing else in the count, if not proved, being rejected as surplusage); or by one of the counts, which in effect allege a malicious arrest for more than was owing by the plaintiff. I object to considering the defects of a declaration, upon a motion for nonsuit, as they would be considered upon a special demurrer. I think that a new trial should be ordered.

Motion granted.

 The following.is a copy of the second count of the declaration:
“ For that whereas also the said defendants, copartners aforesaid, -heretofore, to wit, on the nineteenth, day of May, in the year of our Lord one thousand eight hundred and forty-eight, not then having any- reasonable or probable cause of action against the plaintiff, then due and- owing to the amount of the sum of money for *371 which they caused the plaintiff to he arrested, as hereinafter mentioned, hut contriving and intending to harrass, oppress, and injure the plaintiff, falsely, wrongfully and vexatiously caused to be issued and prosecuted out of the Court of Common Pleas for Charleston District, under the seal of said Court, and tested by the Clfjrk thereof, at the suit of defendants against the plaintiff, a certain writ, called a capias ad res-pondendum, and directed to all and singular the sheriffs of the State of South Carolina, commanding them and each of them, to attach the body of the plaintiff wheresoever he might be found, so as to compeí him to be and appear before the Justices of said State, at the Court of Common Pleas, to be holden at Charleston, for the district of Charleston, on the fourth Monday of October next thereafter, to answer to the said defendants in a plea of trespass on the case and so forth, for certain alleged promises and assumptions by the plaintiff to the defendants made and not performed, to their damage two thousand dollars, and to have the said writ before the Clerk of said Court at Charleston, fifteen days next before the sitting thereof. And the said defendants farther contriving and intending, as aforsesaid, to injure and oppress the plaintiff, afterwards, to wit, on the day and year aforesaid, falsely, wrongfully and vexatiously, and without having reasonable or probable cause of action aforesaid, by means of a false affidavit made by George H. Kelsey, andsworri to on the day aforesaid, before Charles R. Brewster, Esq., styling himself and being a Notary Public and ex officio Magistrate, wherein the said George H. Kelsey, styling himself one of the firm of Kelsey & Deas, made oath and swore, to wit:
STATE OF SOUTH CAROLINA:
Personally appeared before me George H. Kelsey, one of the firm of Kelsey & Deas, and made oath, that W. S. J. Ford is justly indebted to him in the sum of one thousand dollars and ninety-three cents, being a balance due and owing upon his promissory notes, drawn by him, and payable to said Kelsey & Deas, and upon an open account for goods sold and delivered; and this deponent further saith, that no part of said balance of one thousand 93-100 dollars has been paid.
(Signed)
GEORGE H. KELSEY.
Sworn to before me this 19th May, 1848.
(Signed) C. R. Bhewsteh,
Not. Pub. «J. Mag. ex off.
Caused the said writ to be endorsed with an order for bail, and to be delivered to James S. Shingler, Esq., then and now sheriff of Charleston district, to be executed *372 according to law. And the defendants afterwards, and whilst the said writ and the order for bail aforesaid was in force, to wit, on the day and year aforesaid, farther contriving and intending as aforesaid, and not having any such reasonable or probable cause of action as aforesaid, and well knowing said affidavit to be false, falsely, wrongfully, vexatiously, and abusing the authority of law, did cause the said plaintiff to be arrested under and by virtue of the said writ, and the said affidavit and order for bail, and to be committed to the body of the common jail of Charleston district, and imprisoned therein for a long time, to wit, from thence until and upon the twenty-fifth day of' May, in the year aforesaid, when the plaintiff, to obtain his liberation, procured certain persons, to wit, Stephen Watson, Fleetwood Lanneau, B. W. Force, P. M Cohen, E. B. Stoddard and H. S. Roosevelt, to become Special bail for him, and thereby bound unto the sheriff, by a bail bond, to said action, according to the exigency of said writ, and the law in such cases made and provided. And the said W. S. J. Ford in fact further says and avers, that afterwards, to wit, on the nineteenth day of May aforesaid, and while he was wrongfully and falsely imprisoned in the, Charleston jail, at the instance and contrivance of the said defendants, by reason of the writ of capias ad respondendum, and the affidavit and order for bail aforesaid, the said defendants, contriving and intending to oppress, delay and injure the plaintiff, and in abuse of the forms and process of law, did hinder and delay the said plaintiff, and obstruct him in obtaining bail, and did prolong his imprisonment in the jail, by depriving him of the means of obtaining counsel and advice, in this, to wit: The said defendants, on the day and year aforesaid, obtained possession of a certain sealed letter, in writing, from Messrs.'Scranton & Starke, of Augusta, Georgia, Merchants, and addressed to the plaintiff, and dated at Augiista, Georgia, the' eighteenth day of May, A. D. eighteen hundred and forty-eight, and having enclosed therein, bank-notes to the value of one hundred and fifty dollars, to and fox the plaintiff, and under the seal of said letter. And the said defendants being in possession of the said letter, and the bank notes aforesaid, contriving and intending as aforesaid, how they might delay the plaintiff and keep hint imprisoned, detained and kept the said letter, and Concealed the same, and broke the seal thereof, and took and applied the said bank notes to their own use, and denied all knowledge of said letter, or of the contents thereof, or that they had received the same, for a long time, to wit, from the day aforesaid, until the twenty-third day_ of May, aforesaid, to the great hindrance, delay, oppression and vexatiop of the plaintiff. And the plaintiff avers that afterwards, and after he had put in special bail, as aforesaid, and been liberated from imprisonment in the common jail, and delivered to bail as aforesaid, *373 to wit, on the first day of June next thereafter, in the year aforesaid, the said defendants, by Bailey & Brewster, their Attornies, came into the Court of Common Pleas for Charleston District, then in session, and thereupon voluntarily procured an order of said Court to discontinue their said action, which order of said Court was therefore duly entered of record, and afterwards and before the bringing of this action, judgment of discontinuance was duly entered of record in the Court of Common Pleas, for Charleston district, and thereby it appears, by the record and proceedings thereof remaining in the said Court, and by means of the premises, the said action was and is wholly ended and determined. By means of all which said several premises, and during said unlawful imprisonment, and the malicious keeping and concealing his said letter and breaking the seal thereof, and detaining the same and the money therein belonging to the plaintiff, he, the plaintiff, suffered great pain and anxiety of body and mind, and was prevented from transacting his necessary affairs and business by him during that time to be performed, and thereby also, the plaintiff necessarily incurred divers costs and expenses, to wit, to the amount of one thousand dollars, in and about the obtaining his release from the said arrest and imprisonment, and in and about defending himself against the said action ; and in and about other the premises and by means of the premises, the plaintiff was and is injured in his credit and circumstances, and otherwise greatly damnified. To the plaintiff’s damage, ten thousand dollars; therefore, he brings suit and so forth.